IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BOBBY LEE JACKSON, a/k/a    *
DESEAN WILLIAMS,    *
   *
      Plaintiff,    *
   *
VS.    *     CASE NO. 4:04-CV-110-2
   *       42 U.S.C. § 1983
   *
HERMAN JOHNSON, et al.,    *
   *
      Defendants.    *

## REPORT AND RECOMMENDATION

Plaintiff Williams filed the above styled §1983 Complaint and a Request for

*In Forma Pauperis* (*IFP*) status on August 16, 2004, said *IFP* status being granted on

August 26, 2004. Plaintiff Williams filed a Motion for Leave to file a Supplemental

Complaint on October 18, 2004. On October 27, 2004, this Court filed an Order granting

said Motion. The following day, Plaintiff Williams filed his Supplemental Complaint

adding fifteen new defendants, collectively entitled the "Cornell Defendants." On December

9, 2004, Plaintiff Williams filed a Motion to Withdraw his Amended Complaint and said

Motion was granted on December 20, 2004. On December 22, 2004, the Cornell

Defendants, filed a Motion to Dismiss with a supplemental brief attached [1]. Although

Plaintiff Williams was notified of the Motion to Dismiss, he failed to respond. (Document

---

[1] In the Motion to Dismiss, Defendants only listed twelve of the fifteen defendants added with the filing of the Supplemental Complaint; Defendants Raulerson, Bauentil/Barrentine, and Cornell Corrections Corporation were not included in the filing.

-88).  On April 29, 2005, the District Court adopted the Report and Recommendation of this

Court and granted the Motion to Dismiss as to the "Cornell Defendants."  (Document 114).

On April 22, 2005, the remaining defendants[2] filed a Motion for Summary Judgment.

(Document 112).   Petitioner Williams filed a Response to the Motion for Summary

Judgment, a Statement of Disputed Material Facts, a Notice/Statement of Exhaustion of

Administrative Remedies, a Certification of Need to File Discovery, along with several

attachments to these documents on May 11, 2005.  (Documents 115-119).  Defendants filed

a Reply to Plaintiff's Response and a Brief in Reply to Plaintiff's statement of Disputed

Material Facts on May 20, 2005.  (Documents 120-121).  One week later, Plaintiff filed a

Supplemental Response with Exhibits.  (Document 122).

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure dealing with motions for summary

judgment provides in part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact

---

[2] The remaining defendants are Officer Clark, Donald Barrow, Deputy Nervo, Kevin Kinnel, Bryan Sain, Officer Yancey, Sergeant Blade, Del Rossie, Lieutenant Orr, Herman Johnson, Al Jones, James E. Donald, Alan A. Adams, Samuel Dotson, Brown L. Keys, Jr., Lt. Sheffield, Officer Davenport, Counselor Little, Counselor Downs, and Officer Tyler.  (Document 112).

and if the moving party is entitled to judgment as a matter of law.  *Fed. R. .Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution.  *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993).  In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party.  *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th

Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

Motions for summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails or refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law. Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

> **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (emphasis added).

## DISCUSSION

### I.  Administrative Exhaustion of Remedies

While prisoners have a constitutional right to access to the courts[3], those rights are regulated by 42 U.S.C. § 1997(e), which "sets forth the procedures prisoners must follow in exercising their fundamental right of access to the courts.  Under this provision, prisoners must exhaust any administrative remedies available to them before filing a suit in federal court based on violations of constitutional rights."  *Miller v. Tanner*, 196 F.3d 1190, 1192-1193 (11th Cir. 1999).  Specifically, section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In *Alexander v. Hawk*, the Court of Appeals stated that "Congress enacted this

---

[3] *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996), which states that prisoners must be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."

mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive litigation."  159 F.3d 1321, 1324 (11th Cir. 1998); *See, e.g., Rivera v. Allin*, 144 F.3d 719, 727-28 (11th Cir. 1998).  In *Alexander*, the Court reiterated seven policies favoring exhaustion:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise it's discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

159 F.3d 1321, 1327 (11th Cir. 1998); *citing Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F.2d 705, 712 (11th Cir. 1992).  Those enumerated the policy reasons articulated by the Eleventh Circuit for requiring exhaustion are applicable here.

The Valdosta Defendants' claim that Plaintiff Williams' grievance was untimely filed because the alleged incident of excessive force occurred on June 30, 2004, but no grievance was filed until July 20, 2004, making said filing ten days late under SOP IIB05-0001, Section VI(B)(5).  However, it is apparent from the documents provided by Plaintiff since the inception of this claim, that he attempted to file a grievance in accordance with procedure as early as July 1, 2004.  (Plaintiff's Complaint, Supplemental Sheet 4II, and

Plaintiff's Response to Motion for Summary Judgment, Exhibits W, X, and X1).

Plaintiff's informal grievance was filed on July 13, 2004, and his formal grievance was filed thereafter on July 20, 2004. (Plaintiff's Complaint, Supplemental Sheet 4JJ and 4LL and Plaintiff's Response to Motion for Summary Judgment, Exhibit S). On December 13, 2004, the warden/superintendent responded, "Internal Affairs has reviewed this grievance and the Chief Investigator states that no evidence was found to support your allegations." (Plaintiff's Response to Motion for Summary Judgment, Exhibit S). The warden/superintendent's response was forwarded to Plaintiff on December 15, 2004. *Id.* Plaintiff acknowledged receipt of said response on December 30, 2004, and Plaintiff appealed the denial of his grievance the same day. (Plaintiff's Response to Motion for Summary Judgment, Exhibit S, and Plaintiff's Statement of Exhaustion of Administrative Remedies, p. 3). The manager of Inmate Affairs with the Georgia Department of Corrections issued a denial of said appeal on February 14, 2005. (Plaintiff's Response to Motion for Summary Judgment, Exhibit EE).

Plaintiff alleges that a secretary at D. James Ray Prison, Ms. Jaqueline Cooper, called him into her office and told him that Valdosta had denied and closed his grievance on August 2, 2004, due to a technical error. (Plaintiff's Complaint, Supplemental Sheet 4MM). Besides this bare allegation, Plaintiff has offered no other information or evidence as to any statement of Ms. Cooper. Plaintiff further argues that because the prison officials violated the procedure by taking too long to answer his grievance, or send him a confirmation of the

denial of said grievance,  Plaintiff was not required to wait for a response before he filed his §1983 action. (Plaintiff's Response to Motion for Summary Judgment, p. 15).

The law in this circuit is clear that "[a]n inmate incarcerated in a state prison. . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983." *Miller,* 196 F. 3d at 1193.  Standard Operating Procedure IIB05-0001(VI)(C) gives the Warden/Superintendent thirty (30) days to conduct an investigation and respond to a formal grievance.  Plaintiff Williams, however, filed this suit in federal court on August 16, 2004, less than thirty days after he filed his formal grievance.  (Plaintiff's Complaint, Document No. 2).  The record  evidences an ongoing investigation into Plaintiff's Claim from September 2004, until November, 2004. (Plaintiff's Response to Motion for Summary Judgment, Exhibits S, Z3, AA, EE, and Defendant's Motion for Summary Judgment, Exhibit 2).  Furthermore, if an inmate has not received a response to his grievance within the specified time frame, his remedy is not to file in federal court but to appeal his grievance to the Office of the Commissioner.  SOP IIB05-0001(VI)(A)(11).  Plaintiff Williams did attempt to invoke said procedure, by filing a letter with the Commissioner on September 14, 2004, unfortunately, this occurred almost a month after Plaintiff filed his federal suit.  (Plaintiff's Statement of Exhaustion of Administrative Remedies, p.  2-3).  As 42 U.S.C. §1997e(a) requires that a prisoner Plaintiff exhaust his administrative remedies before filing federal suit, Plaintiff Williams was premature in his filing.  Therefore, all claims related to Grievance No. 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, could be dismissed as

8

untimely.  However, because such action would only result in refiling and delay in the disposition of the issues, the substance of Claims One through Thirteen are addressed herein.

## II.  Claims

Plaintiff Williams' complaint contained thirteen enumerated claims.  In an attempt at clarity in the midst of voluminous claims and documents, said claims have been divided by subject matter.

A.  Manufacturing Evidence

Claim Four of Plaintiff's Complaint alleges that Rutledge Defendants, Warden Johnson, and Deputy Wardens Dotson and Keys, Jr., "manufactured false information to effectuate the emergency disciplinary transfer of Plaintiff Williams to Valdosta State Prison . . . with deliberate indifference to the safety and life of [Plaintiff], with reckless disregard for the existing standard operating procedures under established departmental policy in contravention of the Eighth and Fourteenth Amendments to the United States Constitution." (Plaintiff's Complaint, Supplemental Sheet 4B).

As the Eleventh Circuit has repeatedly held, a  "non-moving party 'may not rest on mere allegations or denials of the adverse party's pleading' when a motion for summary judgment is made and supported by affidavits or the other methods provided in Rule 56; 'specific facts showing there is a genuine issue for trial' must be supported 'by affidavits or as otherwise provided in this rule' and provided by the non-moving party to avoid summary

judgment." *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283 (11th Cir. 2002); *citing* F.R.C.P.

56(e).

In *Bennett v. Parker*, the Eleventh Circuit reiterated the Supreme Court holding in

*Celotox Corp. v. Catrett*, stating:

> The existence of material disputed facts will not defeat summary
> judgment in favor of a public official, however, when the
> plaintiff "fails to make a showing sufficient to establish the
> existence of an element essential to [plaintiff's] case, and on
> which [plaintiff] will bear the burden of proof at trial." *Celotex
> Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91
> L.Ed.2d 265 (1986). Facts in dispute cease to be "material"
> facts when the plaintiff fails to establish a prima facie case. "In
> such a situation, there can be 'no genuine issue as to any
> material fact,' since a complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily
> renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23,
> 106 S.Ct. At 2552. Thus, under such circumstances, the public
> official is entitled to judgment as a matter of law, because the
> plaintiff has failed to carry the burden of proof. This rule
> facilitates the dismissal of factually unsupported claims prior to
> trial.

*Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990). Plaintiff Williams has failed to

provide even a scintilla of evidence beyond his own allegations that these defendants

manufactured evidence against him to have him transferred and beaten upon arrival at

Valdosta State Prison. Plaintiff has failed to state a claim upon which relief may be granted.

Furthermore, the PLRA provides at 42 U.S.C. § 1997e(e):

> No Federal civil action may be brought by a prisoner confined
> in a jail, prison, or other correctional facility, for mental or
> emotional injury suffered while in custody without a prior
> showing of physical injury.

Plaintiff has made no allegation of physical injury and the factual allegations do not indicate a physical injury.  The Eleventh Circuit Court of Appeals has held in an *en banc* decision that the physical injury requirement even applies to claims of a constitutional nature and must be more than *de minimis*.  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 2000).  Furthermore, the Eleventh Circuit has held that when a Plaintiff's affidavit contains only a conclusory allegation of serious injury without any other supporting evidence, the allegation should be discounted.  *Id* at 1533; See *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987).   No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.  *Id* at 1534.   Plaintiff has failed to provide support for any alleged constitutional violations on the part of the Rutledge Defendants.  This claim is frivolous and the Motion for Summary Judgment as to Claim Four should be granted.

B.  Retaliation

Claim Nine alleges that Rutledge Defendants Johnson, Dotson and Keys, "purposefully manufactured and transmitted false information ostensibly warranting emergency disciplinary transfer" in retaliation for Plaintiff's multiple grievances, memoranda, disciplinary appeal, letters, a law suit , and Plaintiff's protective custody status, violating Plaintiff's right "to not be retaliated against by Government officials for his engagement in activities protected by the constitution in derogation of the First Amendment to the United States Constitution."  (Plaintiff's Complaint, Supplemental Sheet 4D).  Claim Eleven alleges retaliation on the part of Valdosta Defendant Sain who allegedly uttered to

11

Plaintiff, "'be a man and stay out of protective custody!' Slapping him in the face immediately thereafter" derogating Plaintiff's "right to engage in protected activity without reprisal from government employee in contravention of the First Amendment to the United States Constitution." (Plaintiff's Complaint, Supplemental Sheet 4E).

To sustain a cause of action under 42 U.S.C. §1983 for retaliation, Plaintiff Williams must prove that the type of activity in which he was engaged was constitutionally protected and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274 (1977). Additionally, these types of claims have additional barriers for Plaintiff's to surmount:

> Even when the general rule has long been clearly established (for instance, the First Amendment bars retaliation for protected speech), the substantive legal doctrine on which the Plaintiff relies may facilitate summary judgment in two different ways. First, there may be doubt as to the illegality of Defendant's particular conduct (for instance, whether Plaintiff's speech was a matter of public concern). See generally *Anderson v. Creighton*, 483 U.S. 635, 640-641, 107 S.Ct. 3034, 3039-3040, 97 L.Ed. 2d 523 (1987). Second, at least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation – there must also be evidence of causation. Accordingly, when a public employee shows that protected speech was a "motivating factor" in an adverse employment decision, the employer still prevails by showing it would have reached the same decision in the absence of the protected conduct. *Mt. Healthy City Bd. Of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

*Crawford-El v. Britton*, 523 U.S. 574, 592-593, 118 S.Ct. 1584 (1998). Because Plaintiff has

no constitutional right to remain at a specific correctional facility[4], the case at bar is one of those cases where Plaintiff must show evidence that his protected activity caused the alleged retaliatory action.

As previously stated, Claim Nine alleges a transfer, retaliatory in nature, by Rutledge Defendants due to Plaintiff's filing of grievances, etc.  On June 25, 2004, while at Rutledge State Prison, Plaintiff requested protective custody, claiming that he feared for "his life or safety or well-being in general population."  (Plaintiff's Response to Motion for Summary Judgement, Exhibit L).  That same evening, Plaintiff Williams was transferred to protective custody and assigned to "MI - due to space."  (Plaintiff's Response to Motion for Summary Judgement, Exhibit L1).  In support of their Motion for Summary Judgement, Rutledge Defendants submitted the sworn interrogatories of Defendant Samuel Dotson.  (Document No. 111, Attachment No. 7).  Deputy Warden Dotson stated that although he did not personally recall Plaintiff's transfer to Valdosta State Prison, that "Rutledge State Prison has only a limited number of disciplinary cells.  Accordingly, inmates assigned to disciplinary cells are periodically transferred to larger correctional facilities in order to ensure adequate space is available at Rutledge State Prison."  *Id* at paragraph 4.  This is also supported by Plaintiff's statement that he and three other men in the segregation unit at Rutledge State Prison were transferred to Valdosta State Prison at the same time.  (Plaintiff's Complaint,

---

[4]  The Supreme Court has found no constitutionally based liberty interest in the involuntary transfer of a prisoner to a different facility.  See *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

Supplemental Sheet 4T).  After Defendant's present evidence, the burden shifts to Plaintiff to show that a genuine issue of material facts exists as to each claim.  As previously stated, bare allegations will not suffice.  Plaintiff has submitted no evidence that any alleged conduct on the part of Plaintiff was a "substantial or motivating factor" for the alleged retaliatory act of transferring Plaintiff to VSP.   Therefore, Plaintiff Williams has failed to show causation and Plaintiff has again, failed to state a claim upon which relief may be granted.

Furthermore, as to both Claims Nine and Eleven, Plaintiff has failed to meet the first prong of the retaliation standard.  Neither filing a grievance[5] nor residing in protective custody[6] are constitutionally protected rights.  Therefore summary judgment should be granted on Claims Nine and Eleven as said claims are frivolous and fail to state a ground upon which relief may be granted.

B.  Excessive Force

Claim One of Plaintiff's Complaint alleges excessive force on part of Defendants Blade, Del Rossie, Howell, Kinnel, Orr, Ridall, Sain and Yancy, with the alleged search and assault occurring on June 30, 2004, during his intake into Valdosta State Prison. (Plaintiff's Complaint, Supplemental Sheet 4A).   Although Plaintiff captions Claim One as "Unreasonable Search and Seizure and Excessive Force," Plaintiff fails to plead an

---

[5] As other circuits have recognized, there is no constitutional right to participate in grievance procedures.  See e.g., *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1991) and *Burt v. Holcombe*, 2000 WL 1848082 (S.D. Ala.).  .

[6] In *Adams v. Rice*, the Fourth Circuit held, and we agree, that prisoners do not have a constitutional right to protective custody.  40 F.3d 72 (4th Cir. 1994).

unreasonable search or seizure in the body of the claim.  In his supplemental sheets, Plaintiff describe a strip search upon intake at Valdosta State Prison.  (Complaint, Supplemental Sheets 4Z, 4AA and 4BB).  It appears from the documents submitted by Plaintiff that he did not object to being in custody (the seizure), or  the strip search itself, but rather objected to alleged excessive force used during the strip search.  *Id.*  (and Plaintiff's Response to Motion for Summary Judgement, p.24).  Therefore, as no search and seizure issue has been properly pled by Plaintiff, this Claim will be treated as one of excessive force only.  Claim Two alleges excessive force for the same incident and includes the same defendants as Claim One, but with the addition of Warden Barrow and Deputy Warden Nervo.  *Id.*  Claim Ten alleges racial discrimination on the part of Valdosta Defendants in that during the alleged excessive force incident on June 30, 2004, said defendants beat Plaintiff, "a similarly situated black Plaintiff," differently than they beat non black prisoners, "in contravention of the Equal Protection Clause to the United States Constitution."  (Plaintiff's Complaint, Supplemental Sheet 4D).   Claim Twelve alleges that Valdosta Defendants Blade, Del Rossie, Howell, Jones, Kinnel, Orr, Ridall, Sain and Yancey, denied Plaintiff "medical evaluation and treatment to Plaintiff Williams upon intake and following use of force" and thus "acted with deliberate indifference to the health and safety of Williams contrary to established policies and in derogation of the Eighth and Fourteenth Amendments to the United States Constitution."  (Plaintiff's Complaint, Supplemental Sheet 4E).

These claims all relate to the alleged use of excessive force against Plaintiff on June

30, 2004.  "[A] prisoner alleging excessive force must demonstrate that the defendant acted 'maliciously and sadistically to cause harm.'" *Porter v. Nussle*, 534 U.S. 516, 528, 122 S.Ct. 983 (2002); *citing Hudson v. McMilliam,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *further citations omitted*.  Furthermore, to prevail on an excessive force claim, Plaintiff must prove that the mental state of the defendants was "'purposeful or knowing conduct,'" as opposed to the lesser *mens rea* requirement of deliberate indifference which governs "conditions of confinement claims." *Id*.  Any examination of excessive force as used against a prisoner must be examined under the Eight Amendment.[7]  In an Eight Amendment case, the Plaintiff must show actual injury.  *Oliver v. Falla*, 258 F.3d 1277, 1282 (11th Cir. 2001). Although the injury sustained does not have to be significant, generally it must be more than de minimis.  *Hudson, supra* at 9.  A helpful guide for determining the types of injuries that surmount the *de minimis* physical injury bar has been described as follows:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks.  People in regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care.   Thus, the seriousness of the injury needed to rise above *de minimis,* would under *Siglar v. Hightower, (cite omitted),* require more than the types and kinds of bruises and abrasions about which the Plaintiff complains.  Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)."

---

[7]  *See Hudson v. McMilliam,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), generally.

*Luong v. Hatt,* 979 F. Supp. 481 (N.D. Tex. 1997).

Here, Plaintiff has failed to plead any definitive injury at all. Defendants provided an affidavit from the nurse, Ms. Barrentine Stephenson, who examined Plaintiff at Valdosta State Prison on June 30, 2004, upon intake and after the alleged incident of excessive force. (Defendants' Motion for Summary Judgment, Exhibit 1). Ms. Barrentine Stephenson stated that she "did not witness the use of any force, excessive or otherwise, directed toward Inmate Desean Williams." (Defendants' Motion for Summary Judgment, Exhibit 1). Ms. Barrentine Stephenson further stated that "Inmate Desean Williams voiced no complaints of discomfort, nor were there any skin lesions, spider bites, cuts, scrapes, bruises or other evidence of trauma when I examined him. . . .Inmate Desean Williams did not indicate that force had been used upon him or that he had any injury or required any immediate medical intervention." (Defendants' Motion for Summary Judgment, Exhibit 1). Additionally, the Intrasystem Transfer Form that was completed by Ms. Barrentine Stephenson upon her examination of Plaintiff at intake, indicates that Plaintiff voiced no complaints to her at the time, and that neither his blood pressure nor his heart rate were elevated. (Defendants' Motion for Summary Judgment, Exhibit A). Plaintiff Williams did not seek treatment for any claimed "injury" immediately after the occurrence, nor in the days following the alleged incident. In the documents and letters that Plaintiff attached as exhibits, regarding the informal and formal grievance procedure, Plaintiff never indicated that he was injured or in need of medical examination or attention. (Plaintiff's Response to Motion for Summary

Judgment, Exhibits S, W, X, and X1).  Plaintiff states that he has "suffered complications of

a physical nature involving his back and of a psychological nature involving recurring

dreams of being slapped" as a result of the alleged incident of excessive force.  (Plaintiff's

Response to Motion for Summary Judgment, p.26).  Plaintiff submitted three "Health

Services Request" forms from D. James Ray Prison where he complained of back pain,

however, the first request was not made until August 24, 2004, nearly two months after the

alleged incident.  (Plaintiff's Response to Motion for Summary Judgment, Exhibits T3).

Complaints of back pain were also submitted on September 1, 2004 and September 30, 2004.

(Plaintiff's Response to Motion for Summary Judgment, Exhibits T1 and T2).   In his

deposition on January 21, 2005, the following exchange took place between plaintiff and

counsel for the defendants:

> Q.  Following - and we're going to talk a little bit more, but
> following the physical acts by Lieutenant Ore and by Brian
> Seine, did you have any physical injuries?  And by that, any cuts
> or scrapes or bruises, that you know of?
> A.  No.
> Q.  Okay.
> A.  No, nothing.
> Q.  You didn't have any broken or fractured bones that you know of?
> A.  No.  I've had a problem with my back now, but as far as back pain - and
> as far as any connection between what he did and my back pain,
> I don't know, but I never had the back pain prior to the incident.
> Q.  Okay.
> A.  And it's a thing that I have been seen by medical by.  It,
> basically, extends from my neck down to the right side of my
> back down to my waist - not the left side.  So I'm unsure about
> the whole - whole thing.
> Q.  I was going to ask you, is that just part of being forty or . . .
> A.  Very - it could be.  I don't - you know, it really could be.

18

(Deposition of Plaintiff Williams, p.129-130).  Plaintiff stated under oath that he did not know if his back pain was even related to the alleged incident.

In *Oliver v. R. Falla*, an excessive force case brought by an inmate, the Court of Appeals upheld the jury finding that Plaintiff Oliver had not suffered a compensable injury. 258 F.3d 1277 (11th Cir., 2001).  *Oliver* testified that he suffered a cut to his left knee and that he suffered neck and back pain.  *Id* at 1279.  *"[Oliver]*, however, did not present any evidence of visible injuries, medical expenses, or medical testimony confirming his injuries. *Id*.  The Defendants in *Oliver* produced photographs taken of the Plaintiff shortly after the alleged assault took place, those "photographs showed no discernible injury."  *Id*.  This circuit has clearly held that "in an Eighth Amendment case, the plaintiff must show actual injury."  *Id* at 1282, *See Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.ed.2d 156 (1992).  In the case at bar, Plaintiff Williams stated in his deposition that he had no injuries, except, perhaps some back pain that he stated he now suffers.  However, Plaintiff Williams did not definitively tie the one possible injury alleged to the incident.  Considering the facts in the light most favorable to the non-moving party, Plaintiff's back pain, if related to the alleged incident, is at most, *de minimis*.  Thus, Plaintiff has failed to prove an physical injury to support his allegation of excessive force.

Subsection (e) of 42 U.S.C. § 1997e states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

19

As Plaintiff has failed to show a prior physical injury, he can not claim a psychological injury.  Therefore, Plaintiff has failed to show injury as to any of the excessive force related claims.

Claim Six alleges nonfeasance of Rutledge Defendants, Clark and Tyler, because they delivered Plaintiff to Valdosta State Prison, where the alleged acts of excessive force to take place, violating Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  (Plaintiff's Complaint, Supplemental Sheet 4C).  Claim Ten alleges racial discrimination, that is, that during the alleged incident of excessive force, the defendants beat Plaintiff differently than non-black inmates.  As previously stated, for a Eighth Amendment claim to stand, an actual injury must be shown. Plaintiff Williams has not provided anything beyond bare allegations to support his claim of excessive force and has failed to show any injury.  Without evidence of excessive force, a claim for nonfeasance based on allowing an act of excessive force to take place, can not stand.  The same is true for Plaintiff's claim of discrimination.  Without evidence of excessive force, a claim of racial discrimination based on the degree of excessive force is without merit.  Plaintiff is unable to prove an essential element of this claim and therefore said claim must fail.

Claim Twelve alleges that Valdosta Defendants Blade, Del Rossie, Howell, Jones, Kinnel, Orr, Ridall, Sain and Yancey, denied Plaintiff medical evaluation and treatment to Plaintiff Williams upon intake and following use of force and thus acted with deliberate

20

indifference to the health and safety of Williams.

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Citing Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). First a plaintiff must set forth evidence of an objectively serious medical need. *Id*. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. *Id* (additional citations omitted). This Court must determine if Plaintiff Williams had an objectively serious medical need.

"In our circuit, a serious medical need is considered "one that has been diagnosed by a physician mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Id* . (Additional citations omitted). "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. Therefore this claim must fail as Plaintiff Williams has failed to show that he suffered an objectively reasonable serious medical need. In fact, Plaintiff Williams failed to establish that he suffered any injury at all.

The standard for rebutting a motion for summary judgment, as noted previously, requires a Plaintiff to do more than allege factual wrongdoing by the Defendants. The law requires that he must provide factual evidence which goes beyond mere allegation to prevent summary judgment. Here, the Plaintiff has presented no evidence to suggest that the

21

Defendants committed these alleged acts of excessive force other than his own bare allegations. Therefore, all of Plaintiff Williams' claims tied to the incident of excessive force must fail.

   D.  Conspiracy

Claim Three alleges conspiracy in orchestrating and/or participating in intake where alleged excessive force and unreasonable search took place and includes all Valdosta Defendants except Warden Barrow. (Plaintiff's Complaint, Supplemental Sheet 4B). Count Five alleges a conspiracy between Valdosta State Prison Defendants, Warden Barrow and Deputy Warden Nervo and Rutledge Defendants, Warden Johnson and Deputy Wardens Dotson and Keys, Jr.. (Plaintiff's Complaint, Supplemental Sheet 4B). Claim Seven alleges that Rutledge Defendants Davenport, Downs, Sheffield, Dotson and Keys conspired to violate Plaintiff's right to due process when they prosecuted a disciplinary report that Plaintiff received a month earlier at another place of confinement. *Id.* Claim Eight alleges that Rutledge Defendants Keys, Jr. and Little conspired to deprive Plaintiff of "his right to petition the government for a redress of grievance in violation of the First Amendment to the United States Constitution and 42 U.S.C.A. §1985(3)." (Plaintiff's Complaint, Supplemental Sheet 4C-D). As previously noted, in Claims Three, Five, Seven and Eight, the Plaintiff has alleged that these Defendants, in concert, actively and knowingly violated his constitutional rights. With regard to theses conspiracy claims, Plaintiff has failed to establish a prima facie case that there existed an agreement to deny Plaintiff his constitutional rights. Plaintiff is

required to establish that there was an explicit agreement between the defendants to violate his constitutional rights. *See, Strength v. Hubert*, 854 F.2d 421 (11 Cir. 1988) (overruled on other grounds by *Whitney v. Traylor,* 85 F.3d 581 (11th Cir. 1996). Plaintiff has also failed to allege the operative facts of a conspiracy. "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir.1984) (citing 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.17[5] at 8-180, 181 (2 ed. 1984)). Plaintiff's complaint presents no facts that show that an agreement and concerted action of conspiracy actually existed between any of the Defendants on any of these counts. To state a section 1983 conspiracy claim, a plaintiff must establish the supporting, operative facts of the conspiracy. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). The mere fact that Plaintiff alleges that there was a conspiracy to deprive him of his constitutional rights, is not sufficient to show participation in a conspiracy. Thus, it is recommended that Defendants' Motion for Summary Judgment as to all conspiracy claims be GRANTED.

E.  Due Process

In addition to a conspiracy, Claim Seven also alleged that Rutledge Defendants Davenport, Downs, Sheffield, Dotson and Keys violated Plaintiff's right to due process when they prosecuted a disciplinary report that Plaintiff received a month earlier at a prior place of confinement.  (Plaintiff's Complaint, Supplemental Sheet 4C).

Plaintiff is correct in his recitation of the protections provided under *Wolff*  to

prisoners in disciplinary hearings that may effect their liberty.  However, Defendants can not force Plaintiff to accept those rights if he refuses.  Although Plaintiff was on notice that Davenport was attempting to obtain Plaintiff's version of the April 21, 2004, incident at Central State, Plaintiff admits that he declined to speak or sign any documents concerning said incident.  (Plaintiff's Response to Motion for Summary Judgment, Affidavit of Plaintiff, p.3).  Defendant Bridget Downs attempted to meet with Plaintiff the day before his hearing to discuss the disciplinary charges as his advocate.  (Plaintiff's Response to Motion for Summary Judgment, Exhibit C, Advocate Form).  Plaintiff Williams refused to sign the form and claimed his Fifth Amendment right.  *Id*.  Defendant Downs was present at Plaintiff's disciplinary hearing to act as an advocate on his behalf.  (Plaintiff's Response to Motion for Summary Judgment, Exhibit C2, Affidavit of Bridget Downs).  However, because Plaintiff refused to acknowledge in writing that Downs could acts as his advocate, Defendant Downs did not actually participate.  *Id*.  Defendant Michael Sheffield was the disciplinary report hearing officer at Rutledge State Prison when the hearing in question took place.  (Plaintiff's Response to Motion for Summary Judgment, Exhibit C5, Affidavit of Michael Sheffield).  Plaintiff refused to give a statement in connection with the investigation and therefore the only information available was the investigation conducted by the Georgia Department of Corrections.  *Id*.  Plaintiff refused to give his version of the events or speak to his advocate who could have brought witnesses on his behalf.  Therefore, based upon the investigative report, Defendant Sheffield found that the facts warranted the maximum punishment

provided by standard operating procedures.  *Id.*  Plaintiff may invoke his Fifth Amendment

right against incrimination and refuse to participate in his own disciplinary hearing.

However, it would be ludicrous to then allow him to use that invocation to claim that the

Rutledge Defendants violated his due process rights..

In *Sandin v. Conner*, the U.S. Supreme Court held:

> [An] inmate can only claim a due process violation if he can
> show deprivation of protected liberty interest, and that such
> interests are generally limited to (a) those actions that
> unexpectedly alter the inmate's term of imprisonment; and (b)
> those actions that impose an atypical and significant hardship in
> relation to the ordinary incidents of prison life.

*Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998); citing *Sandin v. Conner*, 515

U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).  Plaintiff Williams failed to

point to any policy in the Georgia Department of Corrections which forbids one correctional

facility from prosecuting a disciplinary incident that occurred at another facility.  Plaintiff

Williams makes a bare allegation, stating:

> [B]ased upon [his] experiences and direct observations for the
> length of his term of incarceration in the Georgia Department of
> Corrections, such undertakings by Davenport[8] were in
> contradiction to the inmate discipline policy and statewide
> practices of prison officials processing disciplinary reports.
> Rather, each prison investigates and prosecutes its own
> disciplinary matters regardless as to the locality of the inmate
> involved.

---

[8] "Undertakings" refers to Defendant Davenport calling Williams "into an office on May 17, 2004, to 'investigate' disciplinary report 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.  (Plaintiff's Response to Motion for Summary Judgment, p.43).

25

(Plaintiff's Response to Summary Judgment, p.43).   In *Wolff v. McDonnell*, the court stated that the State may "create a liberty interest sufficient to invoke the protections of due process."  418 U.S. 539, 557, 94 S.Ct. 2963 (1974).  However, unlike *Wolff*, Plaintiff has failed to plead any actual statute of the state or policy of the Georgia Department of Corrections that the Rutledge Defendant's violated by holding his hearing at a different correctional facility than where the incident occurred.  Thus, Plaintiff has failed to plead an essential element of his claim, that the state created a liberty interest in the location or prosecutors of a disciplinary hearing.  Therefore, the Motion for Summary Judgement as to the Due Process claim in Count Seven should be granted.

E.  Absolute Immunity

Claim Thirteen alleges that Georgia Department of Correction Defendants Adams and Donald, "revised grievance procedure[9] such that compliance proves unreasonably onerous, unnecessarily restrictive, and utterly futile amounting to unconscionability and a denigration of the right of Plaintiff Williams . . . to petition the Government for redress of grievance under the First Amendment to the United States Constitution."  (Plaintiff's Complaint, Supplemental Sheet 4E-F).

"The Eleventh Amendment protects a State – or an arm of the State (such as the Georgia Department of Corrections) – from being sued in federal court without the State's consent." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003)(*en banc*), *cert. denied*, 124

---

[9] SOP IIB05-0001.

S.Ct. 1061 (2004).  As Plaintiff has failed to produce any evidence or even allege that the State has consented to this lawsuit, this Court recommends that Claim Thirteen be DISMISSED as Defendants Adams and Donald are immune from suit.

F.  Qualified Immunity

In their Motion for Summary Judgment, the Rutledge Defendants claimed qualified immunity.  (Defendant's Motion for Summary Judgment, p.15).  In *Saucier v. Katz,* the Supreme Court held that if none of the Plaintiff's constitutional rights were violated had the allegations been established, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  Here, such is the case.  The Plaintiff has failed to prove that any of  the rights guaranteed to him through the United States Constitution were violated by the Rutledge Defendants.  Therefore, no additional analysis is required.

**CONCLUSION**

To preclude summary judgment once the Defendants have provided evidence failing to show that any issues of fact remain, the Plaintiff must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder.  *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  As stated above, genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant.  Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which should be

submitted to the trier of fact for final determination. Having submitted sworn statements, the Defendants, as the moving parties, have met their burden of proof. That is, they have demonstrated to the court the basis for each of their motions which they believe show that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he merely made conclusory allegations, without supporting any of his contentions. In *Barfield v. Brierton*, the court held that Federal Rule of Civil Procedure 56(e) requires:

> [T]hat when a motion for summary judgment is made and supported according to the rule, the nonmoving party's response must set forth specific facts showing a genuine issue for trial. If the party's response consists of nothing more that a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981); *cert. denied* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982)

883 F.2d 928, 934 (11th Cir. 1989). This evidence was examined by this court in a light more favorable to the Plaintiff as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). Having failed to overcome his burden of proof, it is recommended that Defendant's Motions for Summary Judgment be **GRANTED** as Plaintiff has failed to provide evidence to show that any material fact upon which relief may be granted still exists.

Furthermore, this Court finds that Plaintiff's action is frivolous. An action is frivolous when the plaintiff's legal theory or factual contentions lack an arguable basis either in law

or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989).  An action is "frivolous" for purposes of § 1915(e)(2) if "it is without arguable merit either in law or fact." *Napier v. Preslicka,* 314, F.3d 528, 531 (11th Cir. 2002), *cert. denied*, 124 S.Ct. 1038 (2004).

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Motion for Summary Judgment filed on their behalf be **GRANTED** as to all Claims and that Claim Thirteen be **DISMISSED** as Defendants Adams and Donald are entitled to absolute immunity.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff  may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 17th of June, 2005.


                                    S/ G. MALLON FAIRCLOTH
                                    UNITED STATES MAGISTRATE JUDGE

29